**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| GAETANO DIVITTORIO and MARYANN DIVITTORIO,<br><br>          Plaintiffs,<br><br>    v.<br><br>COUNTY OF SANTA CLARA,<br><br>          Defendant. | Case No.  21-cv-03501-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS COMPLAINT WITHOUT LEAVE TO AMEND; AND DISMISSING ACTION WITHOUT PREJUDICE**<br><br>[Re:  ECF 18] |

Plaintiffs Gaetano and Maryann DiVittorio ("the DiVittorios") are a married couple who purchased more than twenty acres of real property ("the Property") in San Martin, California, for the purpose of building a recreational vehicle ("RV") park.  They claim that Defendant County of Santa Clara ("the County") effectively has denied their application for approval to build an RV park, as the County repeatedly has deemed the application to be incomplete even though the DiVittorios allegedly have submitted all required information.  After multiple application rounds, the DiVittorios administratively appealed the County's incompleteness determination.  Upon the denial of that appeal, the DiVittorios filed this suit, asserting a federal takings claim and related state law claims against the County.

The County has filed a motion to dismiss the DiVittorios' complaint under Federal Rule of Civil Procedure 12(b)(1), asserting a facial challenge to subject matter jurisdiction.  Specifically, the County argues that based on the facts alleged in the complaint it is clear that the federal takings claim is not ripe because the DiVittorios have not received a final decision on their application to build an RV park.  The County further argues that absent a viable federal claim, the Court should decline to exercise supplemental jurisdiction over the state law claims.  If the Court denies the

motion to dismiss, the County asks that the Court stay the action under the *Pullman* abstention doctrine.

Judge Lucy H. Koh, to whom the case originally was assigned, took the County's motion under submission without oral argument on October 25, 2021. *See* Clerk's Notice, ECF 26. On January 7, 2022, the case was reassigned to the undersigned judge. *See* Order Reassigning Case, ECF 33. The undersigned also finds the County's motion to be appropriate for decision without oral argument. *See* Clerk's Notice, ECF 35.

The motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND and the action is DISMISSED WITHOUT PREJUDICE.

I. **BACKGROUND**[1]

In October 2015, prior to purchasing the Property, the DiVittorios contacted the County for information and a staff analysis regarding the feasibility of building an RV park on the Property. Compl. ¶ 10, ECF 1. The County recommended that the DiVittorios pay for a letter from the County's principal planner and zoning administrator, Bill Shoe, which they did. *Id*. ¶ 11. Mr. Shoe's letter indicated that the Property was zoned Rural Residential ("RR") and that an RV park was a permitted use for that zoning designation, subject to obtaining a Use Permit and Architecture & Site Approval ("ASA"). *Id*. ¶ 12. Mr. Shoe noted that the DiVittorios were proposing an RV park with 325 spaces, having 15 spaces per acre, and that the last RV park approved by the County had only 13 spaces per acre. *Id*. ¶ 14. Mr. Shoe indicated that the County preferred a less dense RV park and favored "upscale RV resorts." *Id*. Mr. Shoe stated, however, that while land use approvals are obtained through the County, building and development approvals for RV parks are obtained through the State. *Id*. ¶ 16.

Based on the information provided by Mr. Shoe, the DiVittorios proceeded with the purchase of the Property. Compl. ¶ 17. The DiVittorios then participated in multiple pre-application meetings with the County during which the County's principal planner, Manira

---

[1] The allegations of the complaint are accepted as true for purposes of evaluating the County's facial challenge to subject matter jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.").

Sandhir, advised that the number of RV spaces would need to be reduced to 13 per acre. *Id*. ¶¶ 19-21. Ms. Sandhir also informed the DiVittorios for the first time that, pursuant to County ordinance, at least 65% of the total spaces would be limited to occupancy of 30 days or less and that no RVs would be allowed to remain longer than 360 days. *Id*. ¶ 22. The DiVittorios believe that those restrictions violate state law allowing for long term stays by RV residents. *Id*. ¶ 23. Ms. Sandhir objected to 10 employee housing units, stating that employee housing had to be limited to one single-family residence and one secondary dwelling of up to 1,200 square feet. *Id*. ¶ 24.

The DiVittorios agreed to reduce the number of RV spaces to 288, with 14 spaces per acre, and to reduce the number of employee housing units from 10 to 6. Compl. ¶¶ 27. The County advised that the number of RV spaces was still too great and that the housing units had to be reduced to one single family residence and one additional dwelling of up to 1,200 square feet. *Id*. ¶ 28. The County also required processing fees of $13,874. *Id*.

After participating in 3 pre-application meetings with the County, the DiVittorios submitted their application for a Use Permit and ASA to build the RV park on the Property. Compl. ¶¶ 25, 29. The DiVittorios had reduced the number of RV spaces to 270, with 13 spaces per acre. *Id*. ¶ 31. The County deemed the application to be incomplete, identified 30 items to be completed, and requested that the DiVittorios submit 8 revised application sets. *Id*. ¶ 30. Many of the 30 items had not been mentioned by the County during the pre-application process. *Id*.

The DiVittorios participated in a post-application meeting with the County. Compl. ¶ 32. The County advised that the application was still incomplete, identifying 5 items that were incomplete. *Id*. ¶ 34. The DiVittorios took the position that none of the 5 items rendered the application incomplete. The first item was that the application used the term "residential" RV park instead of a "recreational" RV park; under the applicable Rural Residential zoning a "residential" RV park is not an allowed use but a "recreational" RV park is an allowed use. *Id*. The DiVittorios assert that this quibble with semantics did not render the application incomplete. *Id*. The second item was that the RV park density was too great at 14 spaces per acre. *Id*. ¶ 35. The DiVittorios already had agreed to reduce the number of proposed spaces to 270, with fewer than 13 spaces per acre. *Id*. The third item was the employee housing, which the County

3

identified as a multi-family development prohibited by the Rural Residential zoning. *Id*. ¶ 36. The DiVittorios allege that the proposed employee housing clearly was identified as single family residences, which they claim are permitted by right without any need for a Use Permit under the County's ordinances. *Id*. The fourth item was a failure to provide adequate information to review the project against the RV Park Guidelines and the San Martin Integrated Design Plan and Guidelines. *Id*. ¶ 37. The DiVittorios allege that the County did not specify what those deficiencies actually were, and that the local guidelines are preempted by the State of California in The Special Occupancy Parks Act. *Id*. The fifth item was identified as loss of viable agricultural lands. *Id*. ¶ 38. The DiVittorios allege that the County did not identify any further information it needed. To the extent the County proposed to deny the application due to a preference for agricultural lands, the DiVittorio allege that the RV park was a permitted use under the applicable zoning and there was nothing incomplete about their application for such use. *Id*.

The DiVittorios resubmitted their application for a Use Permit and ASA to build an RV park consisting of 270 RV spaces (13 spaces per acre), with a manager's residence and six employee housing units, as well as a pool, clubhouse, general store, playground, picnic area, restrooms, laundry facilities, and storm and wastewater treatment facilities. Compl. ¶ 40. The County again deemed the application incomplete, this time identifying three areas of incompleteness. *Id*. ¶¶ 41-42. The first item was the "RV park intensity." *Id*. ¶ 43. The County for the first time stated that the proposed 1,500 square foot spaces exceeded the County's standard and that the outdoor space buffers were inadequate. *Id*. The second item was lack of consistency with San Martin planning area guidelines. *Id*. ¶ 45. The County requested a site plan and details regarding the outdoor playground and all other accessory site features, as well as a sample materials board for all structures. *Id*. The third item was loss of prime agricultural land. *Id*. ¶ 46. The County indicated that an Environmental Impact Report would be required to determine the impacts to agricultural resources and whether such impacts could be mitigated. *Id*. The County advised that after the Environmental Impact Report, the DiVittorios would need a Statement of Overriding Consideration to approve the RV park. *Id*. The County cited to the 6 employee housing units as the most problematic feature of the plan. *Id*.

4

1    In the DiVittorios' view, the square footage of the spaces did not violate the County's own
2    standards and had always been included in the plan and never objected to by the County.  Compl.
3    ¶ 43-44.  They also believe their plan was consistent with all local guidelines for accessory
4    features.  *Id*. ¶ 45.  Finally, they believed the 6 housing units, which were to be single family
5    residences, were allowed as of right without a need for a Use Permit under County ordinance.  *Id*.
6    ¶ 47.  The DiVittorios' consultant met with the County's consultant to discuss these matters.  *Id*. ¶
7    48.  Afterward, the County's consultant sent an email with a "punch-list of items" needed to
8    complete the application.  *Id*. ¶ 49.  Those items allegedly already had been provided to the
9    County.  *Id*.

10   The DiVittorios resubmitted their application.  Compl. ¶ 50.  The County again deemed the
11   application incomplete.  *Id*. ¶ 51.  In the DiVittorios' view, the items identified by the County
12   either had been addressed previously or were new items not previously identified and not within
13   the jurisdiction of the County.  *Id*. ¶ 52.  For example, the County stated that the latest application
14   was incomplete because it did not include a waste management plan for dog waste in the dog run
15   area.  *Id*. ¶ 53.  The DiVittorios allege that the County had no jurisdiction to demand a waste
16   management plan for dog waste.  *Id*.

17   The DiVittorios administratively appealed the incompleteness determination.  Compl. ¶ 54.
18   They were represented by counsel at a hearing on the administrative appeal held January 28, 2021.
19   *Id*. ¶ 55.  The County's planning commission voted to deny the appeal.  *Id*. ¶ 56.  The County
20   issued a letter dated February 12, 2021, confirming the denial of the administrative appeal and
21   advising that the DiVittorios had 90 days to seek judicial review of the incompleteness
22   determination.  *Id*. ¶ 57.  On March 5, 2021, the DiVittorios submitted a formal claim for relief to
23   the County, seeking the same relief sought in this lawsuit.  *Id*. ¶ 58.  The County rejected that
24   claim on April 8, 2021.  *Id*. ¶ 59.

25   In response, the DiVittorios filed this suit on May 10, 2021.  The complaint asserts one
26   federal takings claim and several related state law claims:  (1) Takings, 42 U.S.C. § 1983;
27   (2) Inverse Condemnation, Cal. Cons., Art. I, § 19; (3) Violation of Permit Streamlining Act, Cal.
28   Gov't Code § 65920 *et seq*.; (4) Violation of Cal. Health & Safety Code § 18865; (5) Violation of

5

Cal. Housing Crisis Act of 2019, Cal. Gov't Code § 65589.5; (6) Housing Discrimination, Cal. Gov't Code § 12955(l); (7) Petition for Writ of Administrative Mandamus, Cal. Civ. Proc. Code § 1094.5; and (8) Declaratory Relief.  The DiVittorios seek just compensation for the taking of the Property, damages, an order that their application to build an RV park be deemed approved, and injunctive relief restraining the County from enforcing ordinances in a manner that violates the United States Constitution or the California Constitution.

The County moves to dismiss the federal takings claim for lack of subject matter jurisdiction under Rule 12(b)(1), asserting that the claim is not yet ripe because the County has not issued a final decision on the DiVittorios' application.  Absent a viable federal claim, the County asks the Court to decline to exercise supplemental jurisdiction over the state law claims.  If the Court denies the motion to dismiss, the County asks that the Court stay this case under the *Pullman* abstention doctrine.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A party may challenge the Court's subject matter jurisdiction by bringing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, such as that asserted by the County in this case, the movant asserts that the lack of subject matter jurisdiction is apparent from the face of the complaint.  *Id*.

### B. *Pullman* Abstention Doctrine

"Under Pullman abstention the federal courts have the power to refrain from hearing cases . . . in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law."  *Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*, 4 F.4th 747, 761 (9th Cir. 2021) (internal quotation marks and citation omitted, alteration in original).  "Abstention is appropriate if: (1) there are sensitive issues of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open, (2) constitutional adjudication could be avoided by a state ruling, and (3) resolution of the state law issue is uncertain."  *Id*. (internal quotation marks and citation omitted).

### III. DISCUSSION

Subject matter jurisdiction in this action is premised solely on federal question jurisdiction as to Claim 1, asserted under 42 U.S.C. § 1983 and the Fifth Amendment's Takings Clause, and supplemental jurisdiction as to Claims 2-8, asserted under state law. *See* Compl. ¶¶ 5-6. For the reasons discussed below, the Court concludes that Claim 1 is not ripe for review and thus does not present a justiciable case or controversy over which the Court has subject matter jurisdiction under Article III of the Constitution. Absent original jurisdiction over Claim 1, the Court cannot exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the Court will grant the County's motion to dismiss all claims. In light of that ruling, the Court need not reach the County's alternative motion to stay the case under the *Pullman* abstention doctrine.

#### A. Claim 1 – Federal Takings Claim

Claim 1 alleges that the County has effected a regulatory and physical taking of the Property without just compensation in violation of the Takings Clause of the Fifth Amendment. Compl. ¶¶ 96. Claim 1 also appears to allege a taking based on $35,000 in fees that the County charged the DiVittorios to process their application. *Id*. ¶¶ 95-96.

The Court begins its discussion by reviewing the relevant law on federal takings claims. The Court then addresses the parties' arguments regarding the alleged taking of the Property and the alleged taking of $35,000 in processing fees.

##### 1. Applicable Law

"The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: '[N]or shall private property be taken for public use, without just compensation.'" *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) (quoting U.S. Const. amend. V). A governmental taking may be physical or regulatory. *See id.* The government effects a physical taking "when it uses its power of eminent domain to formally condemn property"; "physically takes possession of property without acquiring title to it"; or "occupies property – say, by recurring flooding as a result of building a dam." *Id*. "These sorts of physical appropriations constitute the clearest sort of taking, and we assess them using a simple, *per se* rule: The government must pay for what it takes." *Id*. (internal quotation marks and citation

7

omitted).

A regulatory taking occurs "[w]hen the government, rather than appropriating private property for itself or a third party, instead imposes regulations that restrict an owner's ability to use his own property." *Cedar Point*, 141 S. Ct. at 2071. "[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Id*. at 2072. The Supreme Court has indicated that to determine whether a use restriction effects a taking, a court must balance "factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Id*.

"When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a 'final' decision." *Pakdel v. City & Cty. of San Francisco*, 141 S. Ct. 2226, 2228 (2021). "After all, until the government makes up its mind, a court will be hard pressed to determine whether the plaintiff has suffered a constitutional violation." *Id*. The Supreme Court has characterized this finality requirement as "relatively modest," holding that "[a]ll a plaintiff must show is that 'there [is] no question . . . about how the regulations at issue apply to the particular land in question.'" *Id*. at 2230 (quoting *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 739 (1997)).

### 2. Alleged Taking of the Property

The DiVittorios allege that the County has effected both a regulatory and a physical taking of the Property. Compl. ¶ 96. This claim properly is framed as a regulatory taking, but not as a physical taking. While the Divittorios have alleged that the County has restricted their use of the Property by effectively denying their application to develop an RV park, they have not alleged that the County has formally condemned the Property or physically taken possession of it. *See Cedar Point*, 141 S. Ct. at 2071 (distinguishing between physical and regulatory takings).

The County argues that the DiVittorios' regulatory takings claim regarding the Property is not yet ripe, because the DiVittorios have not submitted a completed application to build an RV park and the County has not issued a final decision on such application. The County points out that the process for obtaining a Use Permit involves multiple steps both before and after an application is deemed complete. *See* County of Santa Clara Ordinance Code, Appx. I, Zoning

("Zoning Ord."), § 5.20.020 *et seq*. That process involves a pre-application meeting, submission of an application and fees, environmental assessment pursuant to the California Environmental Quality Act ("CEQA"), determination of application completeness, notice of the application to neighboring land owners and the public, a public hearing, action on the application, and acceptance of any conditions of approval. *See id.* §§ 5.20.020–5.20.160. The County argues that because the process is still at the stage of determining completeness, and the County has not issued a decision on the application itself, there has not been a final decision that could give rise to a federal takings claim.

In opposition, the DiVittorios assert that the County has issued a *de facto* final decision on their application by repeatedly refusing to deem their application complete even though all required information was provided, and denying their administrative appeal of the incompleteness determination.

Because the County asserts a facial challenge to subject matter jurisdiction, the Court must accept all factual allegations in the complaint as true for purposes of evaluating the County's motion to dismiss. The question presented by the County's motion is whether the DiVittorios have alleged facts which, if accepted as true, establish that the County has "reached a 'final' decision" on their application to build an RV park. *Pakdel*, 141 S. Ct. at 2228. Applying the Supreme Court's recent guidance on the finality requirement in *Pakdel*, this Court concludes that they have not.

In *Pakdel*, the plaintiffs were a married couple with a partial ownership interest in a multiunit residential building in San Francisco, California. *See Pakdel*, 141 S. Ct. at 2228. The building was organized as a tenancy-in-common, meaning that all owners technically had the right to possess and use the entire property. *See id.* The City of San Francisco adopted a program that allowed such owners to convert their interests into ownership of their individual units, subject to certain conditions. *See id.* One condition was that nonoccupant owners who rented out their units had to offer their tenants a lifetime lease. *See id.* The plaintiffs agreed to this condition, and the city approved their request to convert their tenancy-in-common interest into an interest in their unit. *See id.* Months later, the plaintiffs asked the city to either excuse them from executing a

9

lifetime lease or compensate them for the lease. *See id.* The city refused and advised the plaintiffs that failure to execute the lifetime lease could result in an enforcement action. *See id.*

The plaintiffs filed suit in federal court, asserting among other things that the lifetime lease requirement was a regulatory taking. *See Pakdel*, 141 S. Ct. at 2228. The district court dismissed the claim without reaching the merits under then-binding precedent requiring a plaintiff to seek compensation in state court before filing a takings claim in federal court. *See id.* at 2229. While the plaintiffs' appeal was pending before the Ninth Circuit, the Supreme Court issued *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019), which overruled in part its prior decision *Williamson Cty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). *Williamson* had established two requirements for ripeness of a regulatory takings claim: first, that the government entity charged with implementing the regulation had reached a final decision regarding application of the regulation to the property at issue ("finality requirement"); and second, that the property owner had sought compensation under state law ("state-litigation requirement"). *See Williamson*, 473 U.S. at 186, 194. *Knick* left *Williamson*'s finality requirement intact but eliminated the state-litigation requirement, *see Knick*, 139 S. Ct. at 2167-69, which was the basis for the district court's dismissal in *Pakdel*, *see Pakdel*, 141 S. Ct. at 2229. Rather than remand the *Pakdel* plaintiffs' claims in light of *Knick*, however, the Ninth Circuit affirmed the dismissal on ripeness grounds, finding that the plaintiffs had never obtained a final decision regarding application of the lifetime lease requirement to their unit. *See id.*

The Supreme Court vacated the Ninth Circuit's judgment, finding that the city had made a final decision when it informed the plaintiffs that they had to execute the lifetime lease or face an enforcement action. *See Pakdel*, 141 S. Ct. at 2230. The city's decision had inflicted an actual, concrete injury in that the plaintiffs had "to choose between surrendering possession of their property or facing the wrath of the government." *Id*. The Supreme Court indicated that "a plaintiff's failure to properly pursue administrative procedures may render a claim unripe *if* avenues still remain for the government to clarify or change its decision." *Id*. at 2231. In *Pakdel*, however, the Supreme Court found that no such avenues remained because the city had issued "a conclusive decision." *Id*. at 2229. The Supreme Court rejected the Ninth Circuit's view that the

10

city's denial of the plaintiffs' requests for exemption from the lifetime lease requirement was not "final" because those requests had been made at the end of the administrative process and had deprived the city of the opportunity to exercise its discretion in reaching a decision. *See id.* at 2229-30. The Supreme Court stated that "administrative missteps do not defeat ripeness *once the government has adopted its final position.*" *Id*. at 2231 (emphasis added).

The present case is factually distinguishable from *Pakdel*, in that the County has not adopted a final position on the DiVittorios' application to build an RV park. At most, the facts alleged in the DiVittorios' complaint establish that the County erred in deeming their application to be incomplete. However, a complete application is only the first of many hurdles the DiVittorios must clear in order to obtain approval to build an RV park. As pointed out by the County, the approval process also requires environmental assessment pursuant to CEQA, notice of the application to neighboring land owners and the public, a public hearing, action on the application, and acceptance of any conditions of approval. *See* Zoning Ord. §§ 5.20.080 – 5.20.160. Because the DiVittorios have not reached these latter stages of the application process, they have failed to satisfy even the "relatively modest" finality requirement described by the Supreme Court in *Pakdel*: "All a plaintiff must show is that 'there [is] no question . . . about how the regulations at issue apply to the particular land in question.'" *Pakdel*, 141 S. Ct. at 2230 (quoting *Suitum*, 520 U.S. at 739). Here, it is entirely in question how the regulations at issue apply to the DiVittorios' land. The County has not made any determination, *de facto* or otherwise, on the merits of the DiVittorios' application. Unlike the *Pakdel* plaintiffs, who sued at the end of the administrative process, the DiVittorios have elected to sue in the middle of the administrative process when "avenues still remain for the government to" render a decision favorable to them. *Pakdel*, 141 S. Ct. at 2231.

In *Ralston v. County of San Mateo*, Case No. 21-cv-01880-EMC, 2021 WL 3810269 (N.D. Cal. Aug. 26, 2021), another court in this district applied *Pakdel* in dismissing a regulatory takings suit where property owners claimed the county denied them a building permit but had not submitted a formal application for development. The plaintiffs, a husband and wife, wanted to build a single family home on land within the Montecito Riparian Corridor in San Mateo County.

*See id.* at *2. Because the plaintiffs' land was subject to state and local restrictions on development within wetland and riparian areas, the plaintiffs could not build without obtaining a coastal development permit ("CDP") under procedures set forth on the county's website. *See id.* The plaintiffs did not apply for a CDP, but instead requested review by the county's planning director, who rejected the plaintiffs' intention to build a home and stated that no home on the property would be allowed. *See id.* The plaintiffs also requested, and were denied, a "buildability letter" from the county, confirming that the property is potentially developable. *See id.* The plaintiffs thereafter filed suit in federal court for violations of their rights under the Fifth Amendment's Takings Clause. *See id.* at *3.

The district court granted the county's Rule 12(b)(1) motion to dismiss without leave to amend. *See Ralston*, 2021 WL 3810269, at *9. The district court observed that the county's zoning regulations specified certain requirements for issuance of a CDP, including submission of an application along with a fee, a location map, a site plan, and building elevations. *See id.* at *6. The plaintiffs had not alleged that they submitted an application, paid the fee, or provided the county with a map, a site plan, or building elevations. *See id.* Under those circumstances, the district court concluded, the county had not had an opportunity to review the plaintiffs' development proposal, apply its regulations to the proposal, and decide whether to approve or deny a CDP. *See id.* The *Ralston* court distinguished the facts before it from those in *Pakdel*, in which the city had issued a final decision. *See id.* at *8. The *Ralston* court concluded that "[a]djudicating Plaintiffs' regulatory taking claims without a final decision from the County would require the trier of fact to impermissibly speculate what land uses the County would allow on the Property." *Id*. at *9.

Although the DiVittorios got further in the process than did the plaintiffs in *Ralston*, their federal takings claim is subject to dismissal for the same reasons articulated by the *Ralston* court. The DiVittorios have elected to sue in the middle of the application process, before the County has evaluated the environmental impacts under CEQA, notified the neighbors and the public, held a public hearing, or rendered a decision on their request to build an RV park. Thus, their regulatory takings claim is unripe and must be dismissed for lack of subject matter jurisdiction.

### 3. Alleged Taking of $35,000 in Processing Fees

The DiVittorios appear to be alleging a separate takings claim based on processing fees paid to the County, alleging: "DEFENDANTS' purposeful delay in failing to deem Plaintiffs' application(s) as complete and recommend for approval by Board of Supervisors to build the RV park while at the same time charging Plaintiffs over $35,000 in application fees, staff fees, and DEFENDANTS' consultant fees is a taking of Plaintiffs' Property by DEFENDANTS, without a legitimate governmental interest and without compensation." Compl. ¶ 95.

It is unclear whether the application fees in question can be the subject of a federal takings claim. The Ninth Circuit recently addressed a takings claim based on a city ordinance requiring that landlords who re-take occupancy of their home upon expiration of a lease must pay tenants a relocation payment. *See Ballinger v. City of Oakland*, --- F.4th ----, 2022 WL 289180 (9th Cir. Feb. 1, 2022). The Ninth Circuit held that in certain circumstances, money can be the subject of a taking. *Id*. at *5-6. "By way of example, money can be subject to a taking when the government procures the interest earned on lawyers' trust accounts; procures the interest accrued in interpleader funds; seizes ownership of liens, which are the right to receive money secured by a particular piece of property; demands that one pay a debt owed to a third party to the state itself; or seizes money without a court order." *Id*. at *5 (internal citations omitted). However, "the City's Ordinance imposes a general obligation to pay money and does not identify any specific fund of money; therefore, it does not effectuate an unconstitutional physical taking." *Id*. at *5. Based on the DiVittorios' allegations in the present case, it appears that they were subjected to a general obligation to pay fees, which may not amount to a taking under *Ballinger*.

Even assuming that the fees identified by the DiVittorios can give rise to a federal takings claim, however, such claim is not ripe. The thrust of the claim appears to be that the County improperly charged the DiVittorios more than $35,000 in fees while refusing to give them anything in return, *i.e.*, approval of their application. As discussed above, the County has neither approved nor disapproved the DiVittorios' application. Thus their takings claim based on the County's collection of fees is unripe.

The motion to dismiss is GRANTED as to Claim 1.

13

**B.     State Law Claims**

If the Court grants the motion to dismiss the sole federal claim, the County asks the Court to decline supplemental jurisdiction over the remaining state law claims and to dismiss them. The DiVittorios argue that the Court should exercise supplemental jurisdiction over the state law claims whether or not it dismisses the federal claim.

The statute governing supplemental jurisdiction provides as follows:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C.A. § 1367(a). "The statute's plain language makes clear that supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it." *Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001). Where, as here, the sole federal claim is dismissed for lack of subject matter jurisdiction, this Court has no discretion to retain the state law claims for adjudication. *See id.*; *see also Prather v. AT&T, Inc.*, 847 F.3d 1097, 1108 (9th Cir. 2017) ("Without subject matter jurisdiction over Prather's federal claim, the district court properly concluded it had no discretion to exercise supplemental jurisdiction over Prather's state law claims.").

Accordingly, the motion to dismiss is GRANTED as to the remaining state law claims.

**C.     Leave to Amend**

Having determined that the complaint is subject to dismissal, the Court must decide whether leave to amend is warranted. Leave ordinarily must be granted unless one or more of the following factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing *Foman* factors).

The Court finds no undue delay (factor 1) or bad faith (factor 2). The Court has not issued any prior dismissal orders (factor 3), and allowing amendment would not unduly prejudice the

County (factor 4).  However, amendment would be futile (factor 5).  It is clear from the facts alleged in the complaint, and accepted as true by the Court, that the County has not issued a final decision on the DiVittorios' application to build an RV park.  Accordingly, the complaint will be dismissed without leave to amend.

**IV.   ORDER**

(1)   The motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.

(2)   The action is DISMISSED WITHOUT PREJUDICE.

(3)   The Clerk shall close the file.

Dated:  February 10, 2022

_____
BETH LABSON FREEMAN
United States District Judge